UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | | |
|---|---|---|
| GEOFFREY L. SWARTZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:07-cv-771 |
| | ) | |
| v. | ) | Honorable Robert J. Jonker |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| _____ | ) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking

review of a final decision of the Commissioner of Social Security finding that plaintiff was not

entitled to disability insurance benefits (DIB) or supplemental security income (SSI) benefits.  On

February 24, 2004, plaintiff filed his applications for benefits,[1] claiming an August 12, 2002 onset

of disability.  (A.R. 49-51, 213-15).  Plaintiff's claims were denied on initial review.  On May 2,

2006, plaintiff received a hearing before an administrative law judge.  (A.R. 233-57).  The then

thirty-three year old plaintiff testified that his right leg, hip, and lower back problems were the

medical conditions or complaints that prevented him from working.  (A.R. 241, 243).  Plaintiff

testified that he had never had surgery, and that no physician had recommended surgical intervention.

(A.R. 244).

———

[1]February 24, 2004 is the protective filing date the Social Security Administration assigned
to plaintiff's applications for DIB and SSI benefits.  "A protective filing date is the date the claimant
first contacts the Social Security Administration about filing for benefits."  *Wening v. Astrue*, No.
3:06 cv 300, 2008 WL 859031, at * 1 n.2 (S.D. Ohio Mar. 31, 2008).  Plaintiff did not sign and file
his written applications for benefits until April 12, 2004.

On September 21, 2006, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 22-29).   On June 7, 2007, the Appeals Council denied review (A.R. 5-8), and the ALJ's decision became the Commissioner's final decision.  On August 9, 2007, plaintiff filed his complaint seeking judicial review of the Commissioner's decision denying his claims for DIB and SSI benefits. Plaintiff's brief raises a single issue:

> DID THE COMMISSIONER ERR IN NOT FINDING THAT MR. SWARTZ'S OBESITY IS A MEDICAL IMPAIRMENT?

(Plf. Brief at 7, docket # 8).  Upon review, I find that plaintiff's argument does not provide a basis for disturbing the Commissioner's decision.  I recommend that the Commissioner's decision be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Heston*, 245 F.3d at 534 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).  The scope of the court's review is limited.  *Buxton*, 246 F.3d at 772.  The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Walters v. Commissioner*, 127 F.3d at 528; *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993). "The findings

of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ."
42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The
findings of the Commissioner are not subject to reversal merely because there exists in the record
substantial evidence to support a different conclusion. . . .  This is so because there is a 'zone of
choice' within which the Commissioner can act without fear of court interference."  *Buxton*, 246
F.3d at 772-73.  "If supported by substantial evidence, the [Commissioner's] determination must
stand regardless of whether the reviewing court would resolve the issues of fact in dispute
differently."  *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780,
782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would
have decided the matter differently than the ALJ did, and even if substantial evidence also would
have supported a finding other than the one the ALJ made, the district court erred in reversing the
ALJ.").  "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a
preponderance of the evidence supports the claimant's position, so long as substantial evidence also
supports the conclusion reached by the ALJ."  *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir.
2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

### Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social
Security Act from his alleged onset of disability of August 12, 2002, through the date of the ALJ's
decision.  Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability.
The ALJ found that plaintiff's lower back condition constituted a severe impairment.  (A.R. 24-25).
 Plaintiff did not have an impairment or combination of impairments which met or equaled the

requirements of the listing of impairments.   The ALJ determined that plaintiff's subjective complaints were not fully credible.  (A.R. 26-27).  The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work with a sit/stand option at will and restrictions in lifting a maximum of 20 pounds occasionally and 10 pounds frequently[;] standing, walking, and/or sitting six hours in an eight hour work day; only occasional use of ramps or stairs; occasional stooping and crouching; and occasional bending, twisting or turning at the waist.

(A.R. 26).  Plaintiff was twenty-nine years old as of his alleged onset of disability date and thirty-three years old as of the date of the ALJ's decision.  Thus, at all times relevant to his claims for benefits, plaintiff was classified as a younger individual.  The ALJ found that plaintiff has at least a high school education and is able to communicate in English.  The ALJ found that the transferability of job skills was not material to a determination of disability.  Plaintiff was unable to perform his past relevant work as a "welder, turkey plant worker, dishwasher, and tax pick-up employee."  (A.R. 27).  The ALJ then turned to the testimony of a vocational expert (VE).  In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 23,000 jobs in Michigan's Lower Peninsula that the hypothetical person would be capable of performing.  (A.R. 254-55).  The ALJ held that this constituted a significant number of jobs.  Using Rules 202.21 and 202.22 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled.  (A.R. 28-29).

**1.**

Plaintiff argues that the ALJ's decision should be overturned because the ALJ's failed to find that plaintiff's obesity constituted a severe impairment and "failed to consider the effect of Mr. Swartz's obesity, in combination with his other impairment, on his ability to work on a sustained basis." (Plf. Brief at 9). At step two of the sequential analysis, the ALJ found that plaintiff's lower back condition constituted a severe impairment. Where, as here, at least one severe impairment is found at step two of the sequential analysis, the ALJ's failure to list additional impairments as severe at step two cannot provide a basis for reversing the Commissioner's decision. *Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).

Plaintiff did not testify that he had any obesity-related functional restrictions. No treating or examining physician diagnosed plaintiff as being obese. Plaintiff's medical records do not even include a recommendation that plaintiff lose weight. Courts have regularly held that under such circumstances that an ALJ's failure to mention obesity or Social Security Ruling (SSR) 02-1p is not reversible error. *See Forte v. Barnhart*, 377 F.3d 892, 896-97 (8th Cir. 2004); *Broz v. Astrue*, No. 3:07cv204, 2008 WL 1995084, at * 15 (N.D. Fla. May 5, 2008); *Rodriguez v. Commissioner*, No. 7:06-CV-151-BH, 2008 WL 1958985, at * 12 (N.D. Tex. Apr. 29, 2008); *Crowley v. Astrue*, No. 4:06CV1686, 2008 WL 596241, at * 13 (E.D. Mo. Mar. 4, 2008).

SSR 02-1p does not provide a basis for disturbing the Commissioner's decision. Although this ruling provides a formula for making a clinical diagnosis of obesity based on a person's Body Mass Index (BMI), it also states that a BMI over thirty does not correspond to any particular level of functional restriction:

> The National Institutes of Health (NIH) established medical criteria for the diagnosis of obesity in its Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults (NIH Publication No. 98-4083, September 1998). These guidelines classify overweight and obesity in adults according to Body Mass Index (BMI). BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m$^2$). For adults, both men and women, the Clinical Guidelines describe a BMI of 25-29 as "overweight" and a BMI of 30.0 or above as "obesity."
>
> The Clinical Guidelines recognize three levels of obesity. Level I includes BMI's of 30.0 - 34.9. Level II includes BMIs of 35.0 to 39.9. Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40. These levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss.

*Titles II & XVI, Evaluation of Obesity*, SSR 02-1p (reprinted at 2000 WL 628049, at * 2 (S.S.A. Sept. 12, 2002)). No physician diagnosed plaintiff as having any obesity-related functional restrictions. During the relevant period from August 12, 2002 through the date of the ALJ's decision, plaintiff's weight ranged from 206 pounds to as high as 215 pounds. (A.R. 166, 186, 188, 190, 192, 196, 198). As of the date of his May 2, 2006 hearing, plaintiff was 5 feet 10 inches (1.77800 meters) tall and weighed 206 pounds (93.440 kilograms)(A.R. 241), yielding a BMI of 29.55761. This is below the level necessary for a medical diagnosis of obesity.

Even assuming *arguendo* that plaintiff's BMI had exceeded the 30.0 threshold for a diagnosis of obesity, SSR 02-1p states that there is not always a significant correlation between BMI and excess body fat. "[S]omeone with a BMI above 30.0 may not have obesity if a large percentage of the weight is from muscle." 2000 WL 628049, at * 2. Plaintiff was twenty-nine years old as of the date of his alleged onset of disability, and prior to that he had worked for approximately six years performing heavy work as a welder, lifting weights "from between 75 and 125 pounds." (A.R. 53-54, 62, 70, 242, 253). In determining whether the impairment of obesity exists, the Commissioner generally relies on the judgment of a physician who has examined the claimant and reported his or

her appearance and build, as well as weight and height.  2000 WL 628049, at * 3.  It "will usually be evident from the information in the case record whether the individual should not be found to have obesity, despite a BMI of 30.0 or above." *Id.*   No treating or examining physician diagnosed plaintiff as being obese or overweight.  Plaintiff's treating physician Rose Lovio-Pascoe, M.D., observed that plaintiff's extremities were "strong and equal, [with] no atrophy, no edema and no cyanosis," and neurologically, plaintiff had no pain to palpation of [his] lumbar spine." (A.R. 197).  Plaintiff states that on April 4, 2006 his "BMI rating was 30.25 as found by his treating physician." (Plaintiff's Brief at 17)(citing A.R. 191).  Plaintiff's statement is inaccurate.  The BMI calculation cited was made by a physician's assistant, and the BMI was achieved by utilizing a figure of only "69.5" inches for plaintiff's height. (A.R. 191).  The physician's assistant never offered a diagnosis of obesity.  She described plaintiff as "well nourished [and] well developed" and further observed that plaintiff "look[ed] like [his] stated age, [and was] in no distress." (*Id.*).  Elsewhere in the record, plaintiff's abdomen was described as "flat and non tender without distention." (A.R. 166).   The absence of a diagnosis of obesity by any treating or examining physician provides compelling evidence that plaintiff was not obese, and that plaintiff did not suffer from obesity-related functional restrictions.

Plaintiff's argument that the ALJ failed to consider his impairments in combination requires little discussion.  The ALJ's opinion clearly stated that he considered plaintiff's impairments in combination.  (A.R. 23-24).  Given this statement, the ALJ is not required to further elaborate upon his thought processes. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987); *see also Simons v. Barnhart* 114 F. App'x 727, 734 (6th Cir. 2004)(The ALJ stated that he was obligated to consider all the claimant's symptoms, found that the claimant had an

impairment or combination of impairments that were severe, and the lack of a separate discussion

of each of the claimant's multiple impairments "does not mean that the [ALJ] did not consider their

combined effect.").

**2.**

Plaintiff attempts to interject a new argument in his reply brief: "Plaintiff's credibility

was improperly impugned by the ALJ, in part, because [plaintiff] helped care for his three children

in their home." (Reply Brief at 2, docket #10).  Raising a new argument in a reply brief is patently

improper, and constitutes a violation of the court's Order Directing the Filing of Briefs.  (docket #

7, ¶ 1).  It is well established that a reply brief is not the proper place to raise new arguments.  *See*

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008);  *Rush v. Illinois Cent. R.R. Co.*,

399 F.3d 705, 727 n.19 (6th Cir. 2005);  *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir.

2002);  *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001).  A reply brief is the plaintiff's

opportunity to respond to arguments raised for the first time in the defendant's brief.  A plaintiff

cannot wait until the reply brief to make new arguments, thus effectively depriving the opposing

party of the opportunity to expose the weaknesses of plaintiff's arguments.  *Scottsdale*, 513 F.3d at

553.  I find that the new argument raised in plaintiff's reply brief has been waived.

Assuming *arguendo* that the argument has not been waived, it is patently meritless.

This court does not make its own credibility determinations.  *See Walters v. Commissioner*, 127 F.3d

at 528.  The court cannot substitute its own credibility determination for the ALJ's.  The court's

"review of a decision of the Commissioner of Social Security, made through an administrative law

judge, is extremely circumscribed . . . ."  *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir.

2005).  The Commissioner's determination regarding the credibility of a claimant's subjective

complaints is reviewed under the deferential "substantial evidence" standard. "Claimants

challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152

F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's

determinations of credibility great weight and deference particularly since the ALJ has the

opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying."

*Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference,

because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective

complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the

demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly

and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230,

1234 (6th Cir. 1993). Plaintiff testified that he was responsible for the care of his three minor

children while his wife was at work (A.R. 246), and that his daily activities included driving a car,

cooking, laundry, grocery shopping, and helping his children with their school work. (A.R. 241-50).

The written forms plaintiff completed (A.R. 95-102) revealed that plaintiff's daily activities centered

around providing care for his children and performing household chores. (A.R. 96). Finally,

plaintiff's medical records stated that plaintiff was at home raising his three daughters, and that he

was the "primary caretaker of [the] children." (A.R. 182, 192). It was entirely appropriate for the

ALJ to take plaintiff's daily activities into account in making his credibility determination. *See*

*Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Walters v. Commissioner*, 127 F.3d 525,

531-32 (6th Cir. 1997); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir.

1990). The ALJ's credibility determination (A.R. 26-27) is supported by more than substantial

evidence.

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:   July 7, 2008                                /s/  Joseph G. Scoville
                                                      United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).